UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:

DEARBORN BANCORP, INC.

    Debtor
_____/

Case No. 13-44665
Chapter 7
Honorable Thomas J. Tucker

FRED J. DERY, TRUSTEE,

    Plaintiff.

v.

Adv. Proc. No. _____

MICHAEL J. ROSS

    Defendant.
_____/

## COMPLAINT

Fred J. Dery, in his capacity as the Chapter 7 Trustee (the "Trustee") of Dearborn Bancorp, Inc. (the "Debtor"), by and through his undersigned counsel, alleges as follows:

### Jurisdiction and Venue

1. This Court has jurisdiction over this matter under 28 U.S.C. §§ 157 and 1334.

2. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (F), (H) and (O).

3. Venue is proper in the Eastern District of Michigan and before this Court under 28 U.S.C. § 1409(a) because this adversary proceeding arises under title 11 of the United States Code (the "Bankruptcy Code").

4. This adversary proceeding is commenced under Rule 7001 *et seq.* of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and sections 502(d), 547(b), 548(a)(1) and 550 of the Bankruptcy Code.

**Background**

5. On March 11, 2013 (the "Petition Date"), the Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code.

6. The Debtor was, and remains, the sole owner of Fidelity Bank (the "Bank") for many years until March 30, 2012. The Debtor had no significant business operations independent of its ownership of the Bank.

7. Michael J. Ross (the "Defendant") was employed by the Debtor as its President and Chief Executive Officer for several years before March 30, 2012 (the "Prior Employment").

8. Defendant's Prior Employment terminated on March 30, 2013.

9. On or about March 30, 2012: (i) the Bank was closed by the Michigan Office of Financial and Insurance Regulation, (ii) the Federal Deposit Insurance Corporation was appointed to be the Bank's receiver, (iii) substantially all of the assets of the Bank were sold to Huntington National Bank, and (iv) the employees of the Bank were terminated.

10. Defendant and the Debtor entered into a Consulting Agreement, a copy of which is attached hereto as **Exhibit 1** (the "Agreement") on March 21, 2012, which Agreement became effective on March 30, 2012.

11. Among other things, the Agreement:

    (a) Rehired Defendant as the Debtor's President and Chief Executive Officer;

    (b) Continued the Defendant's salary under the Prior Employment ($6,867);

    (c) Provided for a payment of $1,000 monthly to the Defendant for health care benefits to fund the same benefits that were provided by the Debtor under the Prior Employment; and

    (d) Provided for an expense reimbursement to the Defendant of $75 monthly.

12. The Debtor entered into a comparable consulting agreement with Jeffrey Karafa, the Debtor's Chief Financial Officer, providing for a weekly salary of $3,846, a payment of $1,000 monthly for health care benefits, and an expense reimbursement of $50 monthly.

13. The Agreement did not require Defendant to devote any minimum amount of time to the Debtor and specifically did not require him to work full time. The Agreement specifically did authorize the Defendant to engage in other business ventures.

14. After the sale of substantially all of the Bank's assets on March 30, 2012, the Debtor had no material business activity and no employees. Since approximately May of 2011, the Debtor had no revenues.

15. As of March 30, 2012, the sole asset of the Debtor was a checking account in the amount of $421,548.07.

16. As of March 30, 2012, the Debtor had minimal assets at risk to creditors.

17. The services performed by Defendant under the Agreement provided no value to the Debtor. Had Defendant not provided any services to the Debtor under the Agreement, the Debtor would have been in precisely the same situation.

18. To the extent the Debtor received any value for the Defendant's services under the Agreement, it vastly overpaid for those services because:

    (a) Defendant had other employment in addition to the Agreement;

    (b) Defendant spent only limited hours working under the Agreement; and

    (c) Defendant and Michael Ross performed identical and therefore duplicative services.

19. From March 30, 2012 through November 2, 2012, the Debtor paid $228,344.00 (collectively, the "Transfers") to the Defendant pursuant to the Agreement from the Debtor's funds. *See* Statement of Financial Affairs [Doc. No. 3], page 9.

3
2551247
13-44665-tjt    Doc 73    Filed 09/18/13    Entered 09/18/13 12:38:41    Page 3 of 8

20. From March 30, 2012, through November 2, 2012, the Debtor paid $130,422.00 to Michael Ross pursuant to his consulting agreement. *Id.*

## Count I
**(Avoidance of Preferential Transfers Under 11 U.S.C. § 547(b))**

21. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

22. At all times relevant hereto the Defendant was an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

23. The Transfers to the Defendant were voluntary transfers of an interest of the Debtor in property.

24. The Transfers to the Defendant were made on or within 1 year before the Petition Date.

25. The Transfers to the Defendant were made at a time when the Defendant was a creditor of the Debtor.

26. The Transfers to the Defendant were made on account of the Agreement, which constituted an antecedent debt.

27. The Transfers to the Defendant were made at a time when the Debtor was insolvent.

28. The Transfers enabled the Defendant to receive more than he would have received if: (i) the Debtor's case was a case under chapter 7 of the Bankruptcy Code, (ii) the Transfers had not been made, and (iii) the Defendant had received payment only to the extent provided by the provisions of the Bankruptcy Code.

29. The Transfers constitute transfers which the Trustee is entitled to avoid pursuant to section 547(b) of the Bankruptcy Code.

4
2551247
13-44665-tjt    Doc 73    Filed 09/18/13    Entered 09/18/13 12:38:41    Page 4 of 8

## Count II
**(Avoidance of Actual Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(A))**

30. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

31. At all times relevant hereto the Defendant was an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

32. The Transfers to the Defendant were voluntary transfers of an interest of the Debtor in property.

33. The Transfers to the Defendant were made or incurred on or within 2 years before the Petition Date.

34. The Debtor knew before it executed the Agreement that the Bank would soon be closed, a receiver appointed, and its assets sold. The Debtor further knew that it had only *de minimis* assets and no revenues.

35. The Debtor entered into the Agreement and paid the Transfers to Defendant in order to hinder, delay or defraud creditors of the Debtor, with the effect of depleting substantially all of the funds available to pay such creditors.

36. The Transfers constitute transfers which the Trustee is entitled to avoid pursuant to section 548(a)(1)(A) of the Bankruptcy Code.

## Count III
**(Avoidance of Constructive Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B))**

37. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

38. At all times relevant hereto the Defendant was an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

39. The Transfers to the Defendant were voluntary transfers of an interest of the Debtor in property.

40. The Transfers to the Defendant were made or incurred on or within 2 years before the Petition Date.

41. The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

42. The Transfers to the Defendant were made at a time when the Debtor was insolvent.

43. The Transfers constitute transfers which the Trustee is entitled to avoid pursuant to section 548(a)(1)(B) of the Bankruptcy Code.

## Count IV
**(Avoidance of Constructive Fraudulent Transfers Under 11 U.S.C. § 548(a)(1)(B)(IV))**

44. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

45. At all times relevant hereto the Defendant was an insider of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

46. The Transfers to the Defendant were voluntary transfers of an interest of the Debtor in property.

47. The Transfers to the Defendant were made or incurred on or within 2 years before the Petition Date.

48. The Debtor received less than a reasonably equivalent value in exchange for the Transfers.

49. The Debtor made the Transfers to or for the benefit of the Defendant as an insider under an employment contract, as that term is used in section 548(a)(1)(B)(IV) of the Bankruptcy Code.

50. The Transfers to the Defendant were not made in the ordinary course of the Debtor's business.

51. The Transfers constitute transfers which the Trustee is entitled to avoid pursuant to section 548(a)(1)(B)(IV) of the Bankruptcy Code.

## Count V
### (Recovery of Avoidable Transfers Under 11 U.S.C. § 550)

52. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

53. The Transfers are avoidable pursuant to sections 547(b), 548(a)(1)(A) and/or 548(a)(1)(B) of the Bankruptcy Code.

54. The Defendant was the initial transferee of the Transfers or the entity for whose benefit the Transfers were made or was an immediate or mediate transferee of such initial transfers.

55. Pursuant to section 550 of the Bankruptcy Code, the Trustee may recover the Transfers, or the value thereof, from the Defendant for the benefit of the bankruptcy estate.

## Count VI
### (Disallowance of Claims Pursuant to 11 U.S.C. § 502(d))

56. The Trustee incorporates all of the foregoing paragraphs of this Complaint as if fully set forth herein.

57. As alleged herein, the Defendant is a transferee of Transfers avoidable pursuant to sections 547(b), 548(a)(1)(A) and/or 548(a)(1)(B) of the Bankruptcy Code and recoverable under section 550 of the Bankruptcy Code.

58. Defendant has not paid or surrendered to the Trustee the Transfers or the value thereof.

59. Defendant has filed a proof of claim in the amount of $137,340.00 [Doc. No. 2] in this bankruptcy case.

60. Pursuant to section 502(d) of the Bankruptcy Code, any and all claims of Defendant against the Debtor must be disallowed until such time as Defendant pays the Trustee the amount for which it is liable.

**WHEREFORE**, the Trustee respectfully requests that the Court: (i) enter a judgment in favor of the Trustee and against the Defendant in an amount not less than the Transfers to Defendant under the Agreement, plus interest, (ii) disallow any claims of the Defendant until such time as the judgment is satisfied, and (iii) grant such other relief as may be appropriate and just.

Respectfully submitted by:

**JAFFE RAITT HEUER & WEISS, P.C.**

By: /s/ Paul R. Hage
Louis P. Rochkind (P24121)
Paul R. Hage (P70460)
Counsel to the Trustee
27777 Franklin Road, Suite 2500
Southfield, MI 48034
Phone: (248) 351-3000
Facsimile: (248) 351-3082
lrochkind@jaffelaw.com
phage@jaffelaw.com

Dated: September 18, 2013.